# UNITED STATES DISTRICT COURT
for the
District of COLUMBIA

## 17-CV-565-BAH

| | |
|---|---|
| ADEM ALBRA, | ) |
| | ) |
| **PLAINTIFF**, | ) |
| v. | ) |
| | ) |
| THE DISTRICT BOARD OF TRUSTEES of | ) |
| MIAMI DADE COLLEGE ("MDC")  *et al* | ) |
| | ) |
| **DEFENDANTS** | ) |

## MOTION FOR TEMPORARY & PERMANENT INJUNCTIVE RELIEF AND/OR RELIEF UNDER THE ALL WRITS ACT TO END "UNLAWFUL DETENTION"

Plaintiff, Adem Albra, hereby moves this Court for immediate relief against the Defendants, particularly, The Board of Trustees of Miami Dade College, as it has now been 2 years since Plaintiff had been expelled and deprived of his liberty and property rights by this Public College without the afforded Due Process as required by law.

Plaintiff is also a qualified person with a disability. The co-Defendant, the US Department of Education, Office of Civil Rights ("OCR"), has a signed voluntary agreement with Miami Dade College which rescinded this expulsion; however, this Agreement had never been enforced and Plaintiff continues to have his liberty stolen from him, and remains "unlawfully detained" as a result.

Plaintiff hereby moves this Court for temporary and permanent injunctive relief pursuant to the Federal Rules of Civil Procedure, particularly Rule 65. If this Court doesn't deem injunctive relief appropriate,

then Plaintiff moves this Court for immediate relief under the All Writs Act. Plaintiff has been unlawfully detained for 2 years and counting; therefore, extraordinary Writs are permitted in extraordinary situations.

There exists no case law in American history where a public college student, particularly one from a protected class and suffering from HIV/AIDS, has ever had just liberty stolen from him/her for this amount of time, without reason, and without due process.

## **MEMORANDUM OF LAW**

*Beacon Theatres v. Westover,* 252 F.2d 864, 871 (9th Cir. 1958): "This right to protection by way of injunction against interference with property or contracts or other pecuniary rights, has been applied so as to protect a person in his right to earn a livelihood and to continue in employment unmolested by efforts to enforce void state statutes."

Throughout history of American Jurisprudence, liberty is an Essential Right and freedom. In the 1798 case of *Calder v. Bull,* Justice Chase described a class of laws which "cannot be considered a rightful exercise of legislative authority":

A law that punished a citizen for an innocent action, or, in other words, for an act, which, when done, was in violation of no existing law; a law that destroys, or impairs, the lawful private contracts of citizens; a law that makes a man a judge in his own cause; or a law that takes property from A. and gives it to B. It is against all reason and justice, for a people to entrust a Legislature with such powers; and, therefore, it cannot be presumed that they have done it.

In *Corfield v. Coryell*, Justice Bushrod Washington wrote that there are certain "privileges and immunities which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments . . . ." These "fundamental principles" were viewed as protections of certain basic rights, such as the right of "enjoyment of life and liberty . . . the right to acquire and possess property . . . and to pursue and obtain happiness and safety."

In *Bertholf v. O'Reilly*, 74 N.Y. 509, 515 (1878) ("the right to liberty [includes an individual's] right to exercise his faculties and to follow a lawful avocation for the support of life; the right of property, the right to acquire power and enjoy it in any way consistent with the equal rights of others and the just exactions and demands of the State.");

 In *re Jacobs*, 98 N.Y. 98, 106-07 (1885) ( "Liberty . . . means the right, not only of freedom from actual servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation. All laws, therefore, which impair or trammel these rights . . . are infringements upon his fundamental rights of liberty . . . ."

*Braceville Coal Co. v. People*, 35 N.E. 62, 63 (Ill. 1893) ("[L]iberty, as that term is used in the constitution . . . embrace[s] the right of every man to . . . adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare."); *State v. Moore*, 18 S.E. 342, 345 (N.C. 1893) ("a man's right to liberty includes 'the right to exercise his faculties, and to follow a lawful vocation for the support of life.'");

*Butchers' Union Slaughterhouse Co. v. Crescent City Live-Stock Landing Co.*, 111 U.S. 746, 756-57, 4 S.Ct. 652 (1884): "As in our intercourse with our fellow-men certain principles of morality are assumed to exist, without which society would be impossible, so certain inherent rights lie at the foundation of all action, and upon a recognition of them alone can free institutions be maintained.

These inherent rights have never been more happily expressed than in the declaration of independence, that new evangel of liberty to the people: 'We hold these truths to be self-evident' – that is, so plain that their truth is recognized upon their mere statement – 'that all men are endowed' – not by edicts of emperors, or decrees of parliament, or acts of congress, but 'by their Creator with certain inalienable rights.' – that is, rights which cannot be bartered away, or given away, or taken away, except in punishment of crime – 'and that among these are life, liberty, and the pursuit of happiness; and to secure these' – not grant them, but secure them – 'governments are instituted among men, deriving their just powers from the consent of the governed. Among these inalienable rights, as proclaimed in that great document, is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment.

…" The right to pursue them, without let or hinderance, except that which is applied to all persons of the same age, sex, and condition, is a distinguishing privilege of citizens of the United States, and an essential

element of that freedom which they claim as their birthright. It has been well said that 'the property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable...''

'I hold that the liberty of pursuit-the right to follow any of the ordinary callings of life-is one of the privileges of a citizen of the United States.' And again, on page 765, 111 U. S., and on page 658, 4 Sup. Ct.: 'But if it does not abridge the privileges and immunities of a citizen of the United States to prohibit him from pursuing his chosen calling, and giving to others the exclusive right of pursuing it, it certainly does deprive him (to a certain extent) of his liberty; for it takes from him the freedom of adopting and following the pursuit which he prefers, which, as already intimated, is a material part of the liberty of the citizen.'

*Goetz v. Windsor Central School District*, 698 F.2d 606, 609 (2nd Cir. 1983): "Liberty as guaranteed by the Fourteenth Amendment denotes the right of the individual to engage in the common occupations of life and to enjoy privileges recognized as essential to the orderly pursuit of happiness."

*Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7 (1915): "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure."

*Meyer v. State of Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923): "While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of

the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge..."

*Morehead v. N.Y. ex rel Tipaldo*, 298 U.S. 587, 601, 56 S.Ct. 918 (1936):"Nothing is better settled in our constitutional law than that liberty does not mean merely freedom from physical restraint, but includes the right to work for a living by using the powers of brain and muscle in the ordinary activities of mankind."

*Greene v. McElroy*, 360 U.S. 474, 492, 79 S. Ct. 1400 (1959): "[R]ight to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the `liberty' and `property' concepts of the Fifth Amendment."

The ability to pursue one's profession or "common calling" is one of the limited number of foundational rights protected under the Privileges and Immunities Clause. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); also *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 219 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause."). Indeed, "[m]any, if not most, of [the Supreme Court's] cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity." *Camden, 465 U.S. at 219.*

The right to be free from unlawful detention has been interpreted to mean not only that the government may not deprive a person of liberty without Due Process of law, but also that a citizen has a right "to be free in

6

the enjoyment of all his faculties; to be free to use them in all lawful ways ; to live and work where he will; to earn his living by any lawful calling; and to pursue any livelihood or vocation"(*Allgeyer v Louisiana*, 165 U.S. 578, 17 S. Ct.427, 41 L. Ed.832 [1897]).

State governments may not regulate individual freedom except for a legitimate purpose and only by means that are rationally designed to achieve that purpose (see *Nebbia v New York*, 291 U.S.502, 54 S. Ct. 505, 78 L. Ed. 940 [1934]).

The Due Process Clause of the 14th Amendment states…'[No State shall] deprive any person of life, liberty, or property, without process of law. In *Board of Regents v Roth* (1972), the Court determined that "liberty" encompasses "the right . . . to engage in any of the common occupations of life, to acquire useful knowledge . . . and generally to enjoy those privileges long-recognized as essential to the orderly pursuit of happiness by free men." Lower federal courts consistently have held that the liberty interests described in Roth are present in the context of public education.

Commenting on Roth, the district court in *Marin v. University of Puerto Rico*, for example, observed that the "right to engage in a chosen occupation is meaningless if one is unable to obtain the training it requires; similarly, the right to acquire useful knowledge implies a right of access to institutions dispensing such knowledge."

The *Marin* court continued: Due process protection is particularly necessary when the governmental action may damage the individual's

standing in the community . . . or may impose "a stigma or other disability that foreclose[s] his freedom to take advantage of other educational or future employment opportunities." Suspension from a public college is a mark on one's record that may well preclude further study at any public and many private institutions and limit the positions one can qualify for after termination of one's studies.

The court in *Dixon* further opined that the example the Alabama Board of Education set could have "broken the spirits of the expelled students and of others familiar with injustice" and that "it is shocking that the officials of a state educational institution, which can function properly only if our freedoms are preserved, should not understand the elementary principles of fair play.

### FOUR PRONG OBJECTIVE FOR INJUNCTIVE RELIEF

1) Plaintiff is unlawfully detained for more than 2 years and continues to be unlawfully detained.  This fact alone justifies and warrants immediate relief.

Plaintiff has permanently suffered as a result of Defendants.  He was 4 months short of obtaining his nursing degree from Miami Dade College, with a job waiting, before expulsion.  His liberty of becoming a Nurse Practitioner has been permanently stolen from him because of the time that has elapsed since his expulsion will cause his 2 years of science prerequisites to expire and would have to retake again to enter graduate school to become a Nurse Practitioner.

8

Plaintiff suffers and continues to suffer as he can't earn a living, has his good name, reputation, honor, or integrity at stake because of what the government is doing to him, notice and opportunity to be heard are essential. In *Donohue v. Baker*, the federal district court observed: "[i]t is well settled that an expulsion from College is a stigmatizing event which implicates a student's protected liberty interest." 976 F. Supp. 136 (D.NY.1997).

2) The threatened harm outweighs whatever damage the proposed injunction may cause the opposing party. This element is satisfied in argument above.

3) The injunction, if issued, not be adverse to the public interest. In this case, an injunction may one of the few actions by this Court validating that we live a lawful, non-arbitrary society.

4) Likelihood of Plaintiff success on its merits. The agreement between OCR and Miami Dade College is tangible, and sufficient to prove the likelihood of Plaintiff to succeed without relying on all of Plaintiff assertion set forth in this motion and in his Complaint.

In conclusion, Plaintiff's case is substantially greater then a whimsical court believing that this is solely a matter where a federal court is being asked set aside [unlawful] decisions by school administrators, but a case where the State (via –public college) Miami Dade College deprived Plaintiff of his right to life, liberty, and pursuit of happiness, without the Due Process required by the U.S. Constitution, along with numerous other violations, i.e. ADA, Section 504, retaliation for First Amendment to name a few. No court has

can justify deprivation of these elementary principles of inalienable rights without cause.

In fact, it would even be more appropriate for this Court to order a federal investigation and send forth the national guard (as in *Brown v Education*), to ensure that disabled persons, including those with HIV/AIDS, do not have their life's stolen from them due to biases by the State/government and its actors.

70% of all persons infected with HIV/AIDS in the United States lives in extreme poverty with incomes of less than $10,000 per year (as per the CDC). 50% or 1 out of every 2 persons living with HIV/AIDS will become homeless at some point of their life. Defendants actions against Plaintiff illustrates just one example of how this is occurring in the country and that the United States is engaged in GENOCIDE against persons living with HIV/AIDS, knowingly or unknowingly. This Court has a duty to end this genocide and refer these statistics to the International Criminal Court for review.

**WHEREFORE**, Plaintiff prays the Court will GRANT the issuance of a temporary injunction order and permanent injunction, and declaratory relief, compensatory and punitive damages determined by an jury, any other additional relief the Court may deem proper, plus attorneys fees and costs:

A. Without the need for bond.

B. Declaring the Defendants' actions are in violation of Plaintiff's Constitutional Rights, along with his Disability Rights.

C. Order Defendant to: (i) reinstate Plaintiff to full student status, retroactive to June 12, 2015; (ii) restore Plaintiff's degree

requirements to where it was upon Admission to the College of Nursing; and (iii) allow Plaintiff to make up / substitute any missed schooling for the current semester.  AS the program is intense already, makeup work alone may not capable for a regularly situated student, let alone a disabled student; hence, a flexibility in substitution may be needed.

D. Immediate appointment of counsel so the entire case can presented appropriately to the Court so Plaintiff can receive remedies that he is inalienably entitled to.

E. Any and all relief this Court deem proper.

**RESPECTFULLY SUBMITTED THIS 29TH  DAY OF MAY 2017.**

_____
Adem Albra, pro se
860 NE 34th St
Fort Lauderdale, FL 33334
954-638-8190
ademalbra@hotmail.com