# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEM ALBRA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 17-cv-565 (BAH)** |
| **BOARD OF TRUSTEES OF MIAMI** ) | |
| **DADE COLLEGE, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants United States Department of Education; Betsy DeVos, Secretary of the Department of Education; Candace Jackson, Acting Assistant Secretary for Civil Rights, Department of Education; and the Office for Civil Rights, United States Department of Education (collectively, the "Federal Defendants") respectfully move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).   The grounds for this motion are set forth more fully in the accompanying supporting memorandum.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:        /s/
JEREMY S. SIMON
DC BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.

Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADEM ALBRA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 17-cv-565 (BAH)** |
| **BOARD OF TRUSTEES OF MIAMI** ) | |
| **DADE COLLEGE, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF**
**FEDERAL DEFENDANTS' MOTION TO DISMISS**

The Complaint in this action purports to assert claims against the Federal Defendants under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) and 706(2), in connection with the Department of Education's (the "Department") resolution of an administrative complaint of discrimination filed by Plaintiff against Miami Dade College, and the Department's monitoring of the agreement that it reached with the College to resolve that complaint. Plaintiff's purported APA claims should be dismissed because Plaintiff has an adequate remedy available to him against the College that precludes a claim for relief against the government under the APA. In addition to this threshold defect, Plaintiff also has failed to plead any cognizable violation of section 706(1) or 706(2) of the APA. His Complaint instead amounts to a generalized challenge to the manner in which the Department has chosen to exercise its discretionary enforcement authority that is not subject to judicial review under the APA. Accordingly, his claims should be dismissed for these additional reasons.

## PROCEDURAL BACKROUND

Plaintiff Adem Albra ("Albra") filed this lawsuit *pro se* on March 29, 2017, against the Federal Defendants and the Board of Trustees of Miami Dade College.   On June 5, 2017, Defendant Board of Trustees of Miami Dade College filed a motion to dismiss the Complaint asserting that this Court lacked personal jurisdiction over the Board and that the APA claims asserted in the Complaint failed to state a claim against the Board.   On June 6, 2017, Plaintiff filed a motion to "supplement complaint" to assert claims against the Board under Title II of the Americans with Disabilities Act of 1990, as amended (Title II"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and 42 U.S.C. § 1983.   Attached to the motion was "Plaintiff's Supplemental Complaint for Defendant The Board Of Trustees Of Miami Dade College" (hereinafter, "Supp. Compl."), which is directed solely at the Board.

As set forth in the Federal Defendants' response to the motion to "supplement complaint," it is unclear from that filing whether it is intended to be an entirely new pleading (in which case the Federal Defendants would no longer be parties and should be dismissed on that basis) or some form of an addendum to the existing Complaint.   (ECF No. 32)   Should the Court treat that filing as an addendum to the original Complaint, rather than as superseding the original Complaint, the purported APA claims against the Federal Defendants asserted in the original Complaint should be dismissed for the reasons addressed herein.

## FACTS

In June 2015, and following a disciplinary hearing, Albra was dismissed as a student from Miami Dade College based on code of conduct violations for allegedly engaging in threatening behavior towards other students.   (Compl. ¶ 7; Ex. 1 at 3-5)   Albra filed an administrative complaint with the United States Department of Education, Office for Civil Rights ("OCR"),

alleging that (1) the College had discriminated against him on the basis of disability in expelling him and (2) that the College's conduct also was in retaliation for Albra's previous OCR complaints. (Ex. 1 at 1) (filed under seal)

OCR investigated the complaint pursuant to its authority under Section 504 and Title II. OCR determined from its investigation that the College had failed to conduct an individualized threat assessment related to Albra's alleged threatening behavior and that, consequently, the College had failed to comply with Section 504 and Title II in its decision to dismiss Albra for code of conduct violations.   (Ex. 1 at 6-7)   During the course of the investigation, OCR also determined that certain policies and procedures of the College concerning direct threat assessments as they relate to students with disabilities failed to comply with Section 504 and/or Title II.   While OCR did not conclude its investigation of the second issue raised in the administrative complaint (Albra's claim of retaliation), OCR's investigation identified areas of concern, which the College expressed an interest in resolving through a resolution agreement.   On January 11, 2016, OCR entered into a Resolution Agreement with the College to remedy the issues that were identified by OCR's investigation.   (Compl. ¶¶ 8, 31; Ex. 1 at 7, 10 and Ex. 2 (filed under seal))

Under the Resolution Agreement, the College agreed to revise its policies and procedures for direct threat assessment as they relate to students with disabilities, to submit the revised policies to OCR for its review and approval (Action Item 1), and also to provide training to College personnel on the revised policies and procedures once approved (Action Item 2).   (Ex. 2 at 1-2) In addition, the Resolution Agreement provided certain "student-focused" remedies relating to Albra specifically.   Those remedies required in relevant part that, by March 7, 2016, the College notify Albra that the decision to dismiss him from the program was being rescinded and instead that he was being suspended pending a review under the approved direct threat policies and

3

procedures to determine whether he posed a direct threat that cannot be mitigated with reasonable accommodations.   (Action Item 3)   The Resolution Agreement required the College to provide OCR, by May 1, 2016, with documentation showing that it completed the direct threat assessment of Albra in accordance with Action Item 1.[1]   (Ex. 2 at 3; *see also* Compl. ¶ 30)

Following entry of the Resolution Agreement, the College conducted a direct threat assessment of Albra and determined that Albra posed a direct threat and that no reasonable accommodation could mitigate that threat.   (Compl. ¶ 31; Suppl. Compl. ¶¶ 54-55)[2]   In the instant lawsuit, Albra alleges that the Federal Defendants violated section 706(1) of the APA because "Plaintiff has not yet returned to College due to action unlawfully withheld and/or unreasonably delayed by the OCR."   (Count I)   Albra also alleges that the Federal Defendants violated section 706(2) of the APA (Counts II-IV).

The contours of Albra's Section 706(1) claim are difficult to discern.   Albra appears to allege that the Federal Defendants violated section 706(1) by not completing the agency's monitoring of the College's compliance with the terms of the Resolution Agreement within a specific timeframe.   (Compl. ¶ 50)   Albra also (or alternatively) appears to allege that the Federal Defendants violated section 706(1) by failing, as of this date, to require the College to readmit him

---

[1]     The second student-focused remedy (Action Item 4) required the College to send a certified written letter to Albra regarding a matter unrelated to his claim of disability discrimination.   (Ex. 2 at 2)

[2]     Plaintiff has not alleged that the Department has completed its monitoring of the College's implementation of the Resolution Agreement and, to the contrary, as discussed in Argument Section III.A below, appears to base his Section 706(1) claim on the fact that OCR has not yet completed monitoring within his preferred timeframe.   Plaintiff alludes to the fact that the matter is still in monitoring in paragraph 33 of the Complaint and also references the assessment that the College submitted pursuant to the Resolution Agreement in paragraph 31 of the Complaint. While not specifically pled in the Complaint, OCR currently is reviewing the information that the College submitted about the process it followed in conducting a direct threat assessment as part of OCR's monitoring of the College's compliance with the Resolution Agreement.

or to deem the College non-compliant with the Resolution Agreement.   (Compl. ¶ 51)   Albra's purported Section 706(2) claim is equally obscure.   Albra appears to allege that the Federal Defendants violated section 706(2) based on OCR's alleged failure to act in a manner preferred by Albra in the exercise of its discretionary enforcement authority to resolve administrative complaints of discrimination.

## STATUTORY AND REGULATORY BACKGROUND

Section 504 of the Rehabilitation Act provides in relevant part that: "[n]o otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   *See* 29 U.S.C. § 794(a).   Section 504 incorporates the remedies of Tile VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.).   *See* 29 U.S.C. § 794a(a)(2).   Accordingly, Section 504 also derives its procedural requirements from Title VI, which does not have an exhaustion requirement.   *See Smith v. Henderson,* 944 F. Supp. 2d 89, 100 (D.D.C. 2013) ("Title VI suits for individual claims of discrimination, however, need not be exhausted."); *Freed v. Conrail*, 201 F.3d 188, 194 (3d Cir. 2000) ("Accordingly, we reaffirm our long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies.").[3]

---

[3]     The exception to this general rule arises when federal employees use Section 504 of the Rehabilitation Act to bring claims against an Executive agency employer instead of using Section 501 of the Rehabilitation Act, which requires federal agencies to create "an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities."   29 U.S.C.   § 791(b).   In those cases, courts have required plaintiffs to exhaust their Title VII administrative remedies before bringing suit because the remedies of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) – not Title VI – are available for violations of Section 501.   *See* 29 U.S.C. § 794a(a)(1); *see also McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1320 (7th Cir. 2008); *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000) (distinguishing Section 504 claim filed by a federal employee from Section 504 claims outside the employment context, finding that the former requires exhaustion where the latter does not).   Since Plaintiff is not a

As a public institution, the College also is subject to Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   "[C]ourts have tended to construe section 504 *in pari materia* with Title II of the ADA . . ., reasoning that these statutory provisions are 'similar in substance' . . . [and consequently] 'cases interpreting either are applicable and interchangeable.'" *Am. Council of the Blind v. Paulson,* 525 F.3d 1256, 1260 n.2 (D. C. Cir. 2008) (citations omitted).

These statutes provide certain mechanisms for ensuring compliance with their mandates. First, individuals injured by discriminatory practices can bring a cause of action directly against the discriminating educational institution. *See Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979); *Women's Equity Action League v. Cavazos ("WEAL")*, 906 F.2d 742, 750 (D.C. Cir. 1990) ("Plaintiffs have implied rights of action against federally-funded institutions to redress discrimination proscribed by Titles VI and IX, *see Cannon*, and express rights of action against federally-funded discriminators under section 504 of the Rehabilitation Act[.]").   The Supreme Court has "suggest[ed] that Congress considered private suits to end discrimination . . . the proper means for individuals to enforce [anti-discrimination statutes]." *WEAL*, 906 F.2d at 751 (relying on *Cannon*, 441 U.S. 677).

Second, federal agencies that disburse federal funds to educational institutions may ensure compliance with Section 504 through voluntary compliance agreements or, if that fails, the initiation of a process that could lead to the termination of federal funding, or "other means

---

federal employee and his claims are not employment-related, these exhaustion requirements do not apply.

authorized by law."[4]   Compliance reviews are conducted "from time to time" by the Department and consist of reviewing the practices of a particular educational institution to determine whether they are complying with anti-discrimination laws.   *See* 34 C.F.R. § 100.7(a). The regulations also provide an administrative complaint procedure, whereby any individual who believes he or she, or any specific class of individuals, has been subjected to discrimination may file a written complaint with the Department.   *See* 34 C.F.R. § 100.7(b). In either case – compliance review or complaint – if the Department investigates and determines that the recipient is not complying with applicable law, the Department is required to attempt to secure voluntary compliance.   This may include undertaking a series of compliance efforts, beginning with voluntary resolution agreements and, if unsuccessful, will potentially culminate in an administrative hearing that could lead to the termination of certain funds, or referral to the U.S. Department of Justice for appropriate proceedings to enforce the applicable anti-discrimination statute. *See* 34 C.F.R. §§ 100.7(c)—(d), 100.8; *see also* 42 USC 2000d-1. The regulations do not impose a timetable on the agency "to effect" an institution's compliance and, to the contrary, direct the agency to utilize informal means "whenever possible" to encourage the institution to correct any noncompliance.   *See,* 34 C.F.R. § 100.7(d) and 100.8(a) and (d).[5]

As the Supreme Court has recognized, the Department's complaint procedure "does not allow the complainant to participate in the investigation or subsequent enforcement proceedings."

---

[4]     The Department's authority under Title II is to investigate and negotiate voluntary compliance agreements.   *See* 28 C.F.R. § 35.190(b)(2).

[5]     The regulations require a "prompt investigation," 34 C.F.R. § 100.7(c), but the term "prompt" is not defined and does not specify any mandatory timeframe.   *Doe v. HHS*, 85 F. Supp. 3d 1, 9 (D.D.C. 2015).   The term "prompt" does not appear elsewhere in section 100.7.   Thus, a complainant does not have "a clear right to a prompt 'resolution' of [his] claim."   *Doe*, 85 F. Supp. 3d at 9.

*See Cannon*, 441 U.S. at 706 n.41. Moreover, even if enforcement proceedings result in a finding of noncompliance, any resulting voluntary resolution agreement "need not include relief for the complainant." *Id*.   Thus, contrary to the assertion in the Complaint (Compl. ¶ 8), the agency has no obligation to consult with the complainant before entering into a voluntary resolution agreement with the institution. *See Cannon*, 441 U.S. at 706 n.41; *see also* 34 C.F.R. § 100.7(d) (requiring only that the agency inform the "recipient" of funds if an investigation reveals noncompliance).[6] Finally, an individual complainant has no right of action against the Department with respect to the complaint process, including attempts at negotiating voluntary compliance agreements, monitoring resolution agreements, or other Department enforcement activities. *see WEAL*, 906 F.2d at 748-50.

The agency's regulations do not dictate the specific manner in which the agency resolves administrative complaints.   The regulations provide only general parameters, requiring a "prompt investigation" whenever a complaint or compliance review "indicates a possible failure to comply," and directing that the investigation "include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this part." *See* 34 C.F.R. § 100.7(c).   The regulations further provide that "[i]f an investigation pursuant to paragraph (c) of this section indicates a failure to comply with this part, the responsible Department official or his designee will so inform the recipient and the matter will be resolved by informal means whenever possible." *Id.* § 100.7(d).

---

[6]     The agency's Case Processing Manual (Ex. 3 to this motion) also requires that OCR "notify the complainant of the recipient's interest in resolution", but does not require that OCR consult with the complainant about the terms of the Resolution Agreement.   (CPM at 19)   The negotiation instead is between OCR and the recipient.   (*Id.* at 20)   The CPM (revised February 2015) is available at:   https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf

The agency's Case Processing Manual ("CPM") provides some additional parameters for the agency to guide investigations and resolution of compliance issues, but those also are broadly stated and, as is relevant here, confer significant discretion on OCR to fashion the terms of a Resolution Agreement.   For instance, the manual provides that "[t]he scope of OCR's investigation and resolution activities will depend upon the particular complaint allegations(s), issue(s) and applicable legal standards" and that OCR has discretion to "determine that it is appropriate to resolve [compliance issues] with an agreement."  (Ex. 3, CPM at 17, 19).   The manual further provides that "OCR will monitor the implementation of the agreement until the recipient is in compliance with the statute(s) and regulations at issue in the case."  (*Id.* at 21)  Pursuant to the manual, "OCR will not close the monitoring of a resolution agreement until such time that OCR determines that the recipient has fulfilled the terms of the resolution agreement and is in compliance with the statute(s) and regulation(s) that were at issue."  (*Id.* at 26)

## ARGUMENT

## I.      STANDARD OF REVIEW[7]

### A.      Rule 12(b)(1) Standard

When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiffs favor."

---

[7]      "The judicial review provisions of the APA, 5 U.S.C. §§ 701-706, provide 'a limited cause of action for parties adversely affected by agency action'", but have been held by the D.C. Circuit not to be a jurisdictional bar.  *Oryszak v. Sullivan*, 576 F.3d 522, 524-25 (D.C. Cir. 2009). Therefore, when the threshold requirements for APA review under sections 701 and 704 are not met, the proper vehicle for seeking dismissal is Rule 12(b)(6).  *Id.* at 525.  Courts on occasion, however, have "'loosely referred'" to the threshold requirements of the APA as "'jurisdictional.'" *Id.* at 525 n.2; *see also Citizens for Responsibility & Ethics in Washington v. DOJ,* 164 F. Supp. 3d 145, 150 (D.D.C. 2016) (noting "a dispute among the courts of this District as to whether the argument Defendants make here—FOIA offers an alternative remedy and thus precludes a claim under the APA—should be reviewed under Rule 12(b)(6) for failure to state a claim or under Rule 12(b)(1) for lack of subject matter jurisdiction"). Consequently, the Rule 12(b)(1) standard also is set forth above.

*Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2001); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). Plaintiff must carry the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Thompson*, 120 F. Supp. 2d at 81; *Vanover*, 77 F. Supp. 2d at 98. In determining whether jurisdiction exists, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.   *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.   Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 110 (D.D.C. 2008).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"   *Id.* at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555.   The Court stated that while there was no "probability requirement at the pleading stage," *id.* at 556, "something beyond . . . mere possibility . . . must be alleged[.]" *Id*. at 557-58.   The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," *id*. at 555, or must be sufficient to "state a claim for relief that is plausible on its face," *id*. at 570.   The Court referred to this newly clarified standard as "the plausibility standard."   *Id*. at 560-61 (abandoning the "no set of facts" language from *Conley v. Gibson*).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), further clarified the plausibility pleading standard, explaining that this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant acted unlawfully. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n] that the pleader is entitled to relief.'"   *Id.*

On a motion to dismiss, under Rule 12(b)(6), the Court may consider, in addition to the facts alleged in the complaint, documents either attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice.   *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendant's supplementary material without converting the motion to dismiss into one for summary judgment.   This Court has held that 'where a document is referred' to in the complaint and is central to plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'").   Additionally, "'the Court may consider documents specifically

11

referenced in the complaint where the authenticity of the document is not questioned.'"   *Louis v. Hagel,* 221 F. Supp. 3d 40, 43 (D.D.C. 2016) (citations omitted).[8]

## II.     ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AGAINST MIAMI DADE COLLEGE

Relief under the APA is limited to circumstances in which "there is no other adequate remedy in a court." 5 U.S.C. § 704.   *WEAL*, 906 F.2d at 750-51; s*ee also Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992) ("The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere.").

Courts have repeatedly held that relief against a federal agency is barred under the APA where the plaintiff can bring suit directly against a regulated entity. *See, e.g.*, *Nat'l Wrestling Coaches Ass'n v. Dep't of Education*, 366 F.3d 930, 945-47 (D.C. Cir. 2004); *Coker v. Sullivan*, 902 F.2d 84, 88-90 (D.C. Cir. 1990) (dismissing APA claim seeking to compel agency to monitor and enforce state compliance with Emergency Assistance plans because the plaintiffs could bring an action directly against states); *Council of and for the Blind v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (dismissing Mandamus Act and APA claims against agency because suits directly against discriminating entities were adequate).[9]

---

[8]      The exhibits accompanying this motion, which consist of the Letter of Resolution (Ex. 1) (filed under seal), the Resolution Agreement (Ex. 2) (filed under seal) that itself is an attachment to the Letter of Resolution, and the OCR Case Processing Manual (Ex. 3) are all documents that may be considered under the Rule 12(b)(6) standard because they are incorporated by reference into the Complaint.   *See* Compl. ¶¶ 28-30 (referencing the "voluntary compliance agreement with MDC" signed in January 2016); Compl. ¶¶ 30-31 (referencing conclusions from the "investigation" and "the findings and voluntary agreement" provided to Plaintiff in January 2016); and Compl. ¶¶ 43-48 (OCR CPM ).

[9]      In a related context, and for similar reasons, courts have declined to permit an APA challenge to the EEOC's investigation and processing of administrative complaints of

As this Court recognized in *Doe v. HHS,* 85 F. Supp. 3d 1 (D.D.C. 2015), the APA is not an appropriate vehicle for a plaintiff claiming to be the victim of discrimination at a federally funded institution to seek relief.   *Id.* at 10-11.   Indeed, such claims are "foreclosed by directly applicable D.C. Circuit precedent" and should be dismissed.   *Id.*

In *Doe,* the plaintiff sued the Department and the U.S. Department of Health and Human Services ("HHS") under the APA and the Mandamus Act for allegedly failing to promptly process her administrative complaints of discrimination against the University of Virginia.   The Department dismissed plaintiff's administrative complaint "but consolidated plaintiff's allegations into an ongoing compliance review of UVA 'to assess whether the University's policies and procedures, and the University's implementation thereof, ensure the elimination of sexual harassment and sexual violence.'"   *Id.* at 6.   Over one year later, plaintiff sued purportedly to challenge the agencies' lack of a prompt response. *Id.* at 10.   This Court held that plaintiff's claims were barred by the D.C. Circuit's decision in *WEAL*, which the Court found involved a "nearly identical" situation.   *Id.*

In *WEAL*, the plaintiffs alleged that the Department did not "process [Title VI and Title IX] complaints, conduct investigations, issue letters of findings, or conduct compliance reviews as promptly or expeditiously as plaintiffs would like."   *Id*. at 745.   Noting that "[p]laintiffs have

---

discrimination.   *See Wright v. Dominquez,* 2004 U.S. App. LEXIS 15239, at *2 (D.C. Cir. July 21, 2004) ("Federal employees such as appellant are not bound by the outcome of the EEOC's administrative process but are entitled to de novo review in district court regardless of that outcome" and "[t]his de novo review provides an adequate remedy . . . for complaints about the EEOC's administrative process, precluding an APA challenge to the EEOC's procedures."); *Ward v. EEOC,* 719 F.2d 311, 313-14 (9th Cir. 1983) ("The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit" and thus "the statutory requirement that there be 'no other adequate remedy in a court' is not met.").

implied rights of action against federally-funded institutions to redress discrimination proscribed by Titles VI and IX," the D.C. Circuit concluded that this "statutory remedy specifically against the discriminating entity" is "adequate and therefore preclusive of a default remedy under the APA." *Id*. at 750-51 (quotation omitted).

Albra is in the same situation as the plaintiffs in *WEAL* and *Doe*.   He is dissatisfied with the disciplinary decision against him by Miami Dade College, which he asserts was motivated by discrimination, and is seeking relief indirectly from the Department of Education by alleging that the Department has failed to adequately monitor the College's compliance with the Resolution Agreement and otherwise failed in unspecified ways in the exercise of its discretionary enforcement authority.   Albra has an adequate remedy against the College under Title II and Section 504 and, indeed, is pursuing that remedy against the College in this lawsuit. [10] Consequently, the claims against the Federal Defendants should be dismissed for the same reason similar claims were dismissed in *WEAL* and *Doe*. [11]

_____

[10]    Albra also has pursued claims under the Section 504 and Title II against the College and certain College officials in another judicial district.   *See, e.g., Albra v. Dist. Bd. of Trs. of Miami Dade Coll.,* 2017 U.S. Dist. LEXIS 59014, at *2 (S.D. Fla. Apr. 17, 2017) (noting another pending action against the College).   Whether an "adequate remedy" exists for purposes of the APA is not dependent on the outcome of any litigation pursuing such a remedy.   *See, e.g., Williams v. Conner,* 522 F. Supp. 2d 92, 103 (D.D.C. 2007) (dismissing APA claim because adequate remedy existed under separate statutory scheme while at the same time dismissing plaintiff's claim under that statute as untimely).

[11]    When, as here, another statute affords an adequate remedy, a plaintiff cannot pursue a claim under either Section 706(1) or Section 706(2).   *See, e.g., Edmonds Inst. v. DOI*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) (dismissing Section 706(1) claim for agency inaction in responding to FOIA request because an adequate remedy existed under FOIA); *Kenney v. DOJ*, 603 F. Supp. 2d 184, 189 (D.D.C. 2009) (dismissing Section 706(2) claim in the FOIA context); *Citizens for Responsibility & Ethics in Washington v. DOJ,* 846 F.3d 1235, 1240, 1246 (D.C. Cir. 2017) (section 704 precludes claim that an agency "fail[ed] to meet its disclosure obligations under FOIA's reading-room requirements"); *see also Anglers Conservation Network v. Pritzker,* 809 F.3d 664, 670 (D.C. Cir. 2016) (suggesting that the appellant there might have argued that "because the Magnuson-Stevens Act excludes § 706(1), there is — in the words of APA § 704 — 'no other

### III.   PLAINTIFF'S CLAIMS ALSO SHOULD BE DISMISSED FOR ADDITIONAL REASONS.

Apart from the question of an adequate remedy under Title II and Section 504, which by itself is dispositive as discussed above, Plaintiff also has failed to plead a cognizable claim under the APA.   Plaintiff purports to assert claims under both Section 706(1) and Section 706(2) of the APA.   The former permits courts to "compel agency action unlawfully withheld or unreasonably delayed" but applies only when "a plaintiff asserts that an agency failed to take a *discrete* action that it is *required* to take."   *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *see also Anglers Conservation Network v. Pritzker,* 809 F.3d 664, 670 (D.C. Cir. 2016) ("§ 706(1) grants judicial review only if a federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific, unequivocal command.'") Section 706(2) permits a court to review final agency decisions that are alleged to be arbitrary, capricious, or contrary to law.

However, the APA precludes judicial review over agency actions "committed to agency discretion by law."   5 U.S.C. § 701(a)(2); *Heckler v. Cheney*, 470 U.S. 821, 830 (1985).   Section 701(a)(2) applies when a court cannot review agency action because the applicable statutes and regulations "are drawn in such broad terms that in a given case there is no law to apply."   *South Dakota v. Ubbelohde,* 330 F.3d 1014, 1027 (D.C. Cir. 2003); *see also Webster v. Doe,* 486 U.S. 592, 600 (1988) (statute allowing termination "whenever the Director 'shall *deem* such termination necessary or advisable in the interests of the United States'" . . . is a standard that "fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review").   Courts, moreover, are not "empowered to enter general orders compelling

---

adequate remedy in a court' for agency inaction and so judicial review pursuant to § 706(1) must be available").

compliance with broad statutory mandates" or "to determine whether compliance was achieved." *Norton*, 542 U.S. at 66-67.

Albra has not plausibly asserted that the agency failed to take a discrete action that it was required to take in connection with its monitoring of the College's compliance with the Resolution Agreement.   Consequently, his Section 706(1) claim fails.   His Section 706(2) claims fail because he has not identified any agency decision that he is challenging but instead seems to take issue with OCR's exercise of its discretionary enforcement authority.   Thus, his claims under Section 706(2) fall within the ambit of Section 701(a)(2) and are not subject to judicial review.

### A.   Section 706(1)

Plaintiff appears to allege in Count I of the Complaint that OCR has failed to monitor the College's compliance with the Resolution Agreement in a timely fashion – presumably by having not yet completed monitoring – and that OCR's alleged inaction violates section 706(1) of the APA.   As this Court recognized in *Doe*, however, a complainant does not have "a clear right to a prompt 'resolution' of [his] claim."   *Doe*, 85 F. Supp. 3d at 9; *supra* note 5 and accompanying text.   There is likewise no specified timeframe in the agency regulations for the agency to complete its monitoring of a resolution agreement.[12]

In *Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990), the D.C. Circuit declined to interfere with a federal agency's monitoring and enforcement duties under the Aid to Families with

---

[12]      Although the agency's CPM provides that "OCR will promptly conduct its monitoring activities" (Ex. 3, CPM at 26), the term "promptly" is not defined and the manual does not "include a required timeframe" governing specific monitoring activities.   *See Doe*, 85 F. Supp. 3d at 9 n.4 Indeed, the agency's regulations do not impose a timetable on the agency "to effect" an institution's compliance and, to the contrary, direct the agency to utilize informal means "whenever possible" to encourage the institution to correct any noncompliance.   *See* 34 C.F.R. § 100.7(d) and 100.8(a) and (d).

Dependent Children program. The Court explained that "the regulations governing [the agency's] reviews and audits do not impose any specific schedule or time frame on the Department." *Id*. at 89. The Court dismissed the plaintiffs' APA claim, noting that the Court "should not steer the Department's resources and shape its priorities when [it] lack[s] knowledge of the matters competing for the Department's attention." *Id*. The same result applies here.

To the extent Plaintiff also is alleging in Count I that OCR has violated Section 706(1) of the APA because it has not, to date, acted in the manner he prefers – *i.e*., it has not ordered the College to readmit him and has not deemed the College to be non-compliant with the terms of the Resolution Agreement – any such claim also is not actionable under the APA.   Plaintiff acknowledges in the Complaint that the College conducted a direct threat assessment pursuant to the terms of the Resolution Agreement.   (Compl. ¶ 31)   The Department's enforcement decision – here its eventual determination whether or not the College's direct threat assessment of Albra complied with Section 504 and Title II – is committed to agency discretion by law.   *See* 5 U.S.C. § 701(a)(2); *Cheney*, 470 U.S. at 833; *Marlow v. U.S. Dep't of Educ*., 820 F. 2d 581, 582-83(2d Cir. 1987).   Albra likewise cannot state a Section 706(1) claim based on CPM provisions (*see* Compl. ¶¶ 43, 47-48) that only could apply, if at all, after a discretionary enforcement determination of non-compliance has been made.

## B.  Section 706(2)

In Counts II-IV, Albra purports to assert claims under Section 706(2) of the APA, but that characterization is misplaced.   Albra has not identified any agency decision that he claims is arbitrary, capricious, or contrary to law, and therefore, Section 706(2) affords no basis for relief. Albra instead seems to contend that the manner in which the agency has exercised its discretionary enforcement authority is inconsistent with unspecified provisions of the agency's CPM, "OCR

Case Precedents," and due process.   Such conclusory allegations, however, are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (plaintiff must do more than make "an unadorned, the-defendant-unlawfully-harmed-me accusation").   Moreover, Albra has failed to plausibly allege that OCR acted contrary to any legal requirement.   His allegations instead are that OCR failed to act in the manner he preferred, in matters reserved to the exercise of OCR's discretion.

### 1.   Count II

In Count II, Albra alleges that OCR failed to apply OCR "case precedents" in evaluating his discrimination claim against the College and "also failed to follow its own Case Processing Manual."   (Compl. ¶¶ 53-54)   Albra's reliance on so-called OCR "case precedents" would appear to be references to resolution letters in other matters, which by their terms are not precedential.[13] As reflected by the resolution letter at issue here, such letters state that they are not "a formal statement of OCR policy and should not be relied upon, cited, or construed as such."   (Ex. 1 at 11).   Albra's contention that OCR's decisions in other matters are "precedent", moreover, constitutes a legal conclusion that the Court need not accept as true for purposes of this motion. *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997) ("The underlying notion is sound: Courts accept plaintiffs' allegations of fact, not their conclusions of law.").

Albra's assertion that OCR "failed to follow its own Case Processing Manual" is entirely conclusory.   Albra fails in Count II to identify any provision of the manual that OCR allegedly violated.   To the extent he offers any specifics in the body of his Complaint, those contentions are contradicted by the manual itself, which is incorporated by reference into the Complaint and thus may be considered by the Court in evaluating this motion to dismiss.

---

[13]    The so-called OCR "case precedents" cited by Plaintiff are not available on the Department's website.   It appears that Albra obtained these citations elsewhere.

For instance, Albra contends that the CPM required OCR to "discuss[]" the terms of the Resolution Agreement with him (Compl. ¶ 8)   But that is a mischaracterization; the manual requires OCR to "notify the complainant of the recipient's interest in resolution" but does not require any discussion with the complainant about the terms of the Resolution Agreement. (Ex. 3, CPM at 19)   Instead, as set forth in the manual, any negotiation or discussion of "the proposed terms of the resolution agreement" is between "OCR and the recipient."   (*Id.* at 20)

Albra's belief that OCR's failure to consult with him resulted in "numerous deficiencies" in the Resolution Agreement (Compl. ¶¶ 8, 28) is likewise not actionable.   The Resolution Agreement contains the items required by the CPM (*compare* Ex. 2 and Ex. 3, CPM at 19, 22), and its specific terms to "effect" the College's compliance are matters within the discretion of the agency to formulate. *Coker*, 902 F.2d at 88 (APA does not afford right to judicial review over an agency's enforcement decisions).   Likewise, OCR has the discretion to include a requirement in the Resolution Agreement for the College to conduct a new direct threat assessment consistent with the revised procedures in order to resolve the violation found in OCR's investigation. Because that is a matter subject to OCR's discretionary enforcement authority, Albra cannot state an APA claim based on OCR's alleged failure to rely instead on a direct threat assessment from Albra. (Compl. ¶ 31)

## 2.  Count III

In Count III, Albra contends that OCR "failed to restore Plaintiff's Constitutional Rights; and allowed [the College] to deprive [him] of his Constitutional Rights of Due Process."   (Compl. ¶ 57)   Albra also alleges that OCR "failed to ensure Due Process of Plaintiff in the voluntary agreement by allowing [the College] to 'suspend' Plaintiff for a period of greater than 30 days while it conducts a threat assessment."   (Compl. ¶ 58)

These claims are not actionable, however, because a voluntary resolution agreement "need not include relief for the complainant." *See Cannon*, 441 U.S. at 706 n.41.   To the extent Albra takes issue with the terms of the Resolution Agreement as they may be applicable to him, that is not a viable claim because the terms to include in such an agreement is a matter committed to agency discretion.   *See* 5 U.S.C. § 701(a)(2); *Cheney*, 470 U.S. at 833; *Marlow*, 820 F. 2d at 582-83.

Albra, moreover, was not suspended without the benefit of a hearing.   He was afforded a disciplinary hearing by the College that resulted in his dismissal from the College.   That dismissal, however, was changed to a suspension under the Resolution Agreement while a direct threat assessment was undertaken by the College subject to review by OCR. (Ex. 2 at 3)

### 3.   Count IV

Count IV is based entirely on a conclusory assertion that OCR "failed to follow procedures" in its CPM.   (Compl. ¶ 61) The procedures allegedly contained in the manual and violated by OCR, however, are not identified.   To the extent Albra is referring to the provisions of the CPM cited in paragraphs 43-48 of the Complaint, those provisions are only triggered once OCR exercises its discretionary enforcement authority to determine that there is noncompliance that cannot been resolved through voluntary means.   Those provisions cannot form the basis for a claim under Section 706(2) here where the matter is in monitoring and no such determination has been made.   Accordingly, this count fails to state a cognizable claim for the same reason as Counts II and III.

## CONCLUSION

For the foregoing reasons, any claims against the Federal Defendants should be dismissed

for lack of subject matter jurisdiction and/or failure to state a claim.

Respectfully submitted,

CHANNING D. PHILLIPS
D.C. BAR # 415793
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov