# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADEM ALBRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-565 (BAH) |
| ) | Chief Judge Beryl A. Howell |
| BOARD OF TRUSTEES ) | |
| OF MIAMI DADE COLLEGE *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The *pro se* plaintiff, Adem Albra, is a Florida resident, who was a nursing student at Miami Dade College ("MDC") until June 12, 2015, when he "was permanently expelled[.]" Compl. ¶ 27. The plaintiff has sued MDC's Board of Trustees and the United States Department of Education ("DOE") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[1] Pending are MDC's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6), and Local Civil Rule 7, ECF No. 23; the Federal Defendants' Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6), ECF No. 41; and the Plaintiff's Motion to Supplement the Complaint against MDC, ECF No. 27. For the reasons explained below, both motions to dismiss are granted and, the plaintiff's motion to supplement is denied, and this case dismissed.

---

[1] In addition to DOE, the plaintiff has named as defendants the DOE's Office for Civil Rights, former Assistant Secretary for Civil Rights Catherine E. Lhamon, in her official capacity, and former Education Secretary John B. King, Jr., in his official capacity. Compl. Caption. Pursuant to Fed. R. Civ. P. 25(d), Education Secretary Betsy DeVos is substituted, as she is the official "personally responsible for compliance" of any order issued under the APA. 5 U.S.C. § 702.

1

## I. BACKGROUND

In a Notice Regarding Local Civil Rule 7(n), ECF No. 42, the federal defendants state that they were unable to file a certified list of the contents of an administrative record, as required in APA cases, because "the Complaint fails to identify an agency decision subject to review" under 5 U.S.C. § 706(2). The agency action forming the basis of this action consists of a January 13, 2016 Letter of Resolution prepared by DOE's Office for Civil Rights ("OCR"), ECF No. 47, and an accompanying Resolution Agreement between OCR and MDC, ECF No. 47-1. *See* Compl. ¶¶ 8, 28-31. The OCR's actions underlying the plaintiff's claims are set out below, followed by a summary of the plaintiff's claims.

### A. OCR's Action

OCR's Letter of Resolution ("Res. Ltr.") establishes that the plaintiff was charged in June 2015 with multiple violations of MDC's code of conduct based on complaints by six female students. The alleged conduct occurred two days into a course, in which the Plaintiff was enrolled along with his accusers. The plaintiff was placed on temporary suspension pending a disciplinary hearing. Following the hearing held on June 22, 2015, the Campus Discipline Committee unanimously found the plaintiff guilty of three of four charges – Defamation, Threats, Extortion; Disruption; and Academic and Speech Freedom – and recommended the plaintiff's expulsion. The plaintiff appealed the decision to the Campus President, who on July 1, 2015, affirmed the Committee's decision and proposed sanction.

The plaintiff filed an administrative complaint with OCR, alleging that MDC (1) discriminated against him on the basis of his disability when he was expelled, and (2) retaliated

against him because of his prior complaints to OCR when it failed to investigate his complaint of discrimination based on sexual orientation.[2]

Following an investigation, OCR determined with regard to the discrimination claim that MDC had violated Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act by failing to conduct an individualized threat assessment before expelling the plaintiff for threatening conduct.[3] OCR further determined that MDC's direct threat procedures were not in compliance with Section 504 and Title II, and also raised concerns about the handling of the plaintiff's retaliation claim. *See* Res. Ltr. at 6-9.

As part of the Resolution Agreement, MDC agreed "to review and revise its policies and procedures . . . for direct threat assessment, as they relate to students with disabilities" by March 7, 2016, and to provide a copy of the revised policy to OCR for review and approval by April 11, 2016. Agreement at 1. In addition, MDC agreed (1) to notify the plaintiff by March 7, 2016, of its decision to rescind his expulsion and suspension "pending a review under the approved direct threat policies and procedures to make a determination as to whether [the plaintiff] poses a direct threat that cannot be mitigated with reasonable accommodations," and (2) to provide OCR documentation of its completed threat assessment by May 1, 2016. *Id.* at 3. Finally, MDC agreed to send by February 1, 2016, "a certified written letter referring [the plaintiff] to the

---

[2] DOE's regulations ensure that programs receiving federal financial assistance are in compliance with the federal antidiscrimination laws. *See* 34 C.F.R. § 100.1. To that end, "[a]ny person who believes himself . . . to be subjected to discrimination prohibited by this part may by himself or by a representative file with the responsible Department official or his designee a written complaint." 34 C.F.R. § 100.7(b). If the ensuing investigation reveals that the recipient is not in compliance, DOE may, as was done in this case, secure a voluntary compliance agreement with the entity. *See* Fed. Defs.' Mem. at 6-7 (discussing governing regulation).

[3] OCR explained that although Section 504 and Title II do not require an institution to retain an individual who poses a direct threat to the health and safety of others, they do require that the institution first "make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modification of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." Res. Ltr. at 6 (emphasis omitted).

OEOP and offering to investigate his complaint of gay discrimination in June 2015 upon his completion of the Complaint Discrimination Form," and to provide a copy of the letter to the plaintiff by March 1, 2016. *Id.* The Agreement included an acknowledgment by MDC that OCR could initiate "administrative enforcement or judicial proceedings to enforce the specific terms and obligations[.]" *Id.*

On September 11, 2017, the federal defendants informed this Court that OCR completed its review of MDC's direct threat assessment of the plaintiff and notified MDC on September 6, 2017, that it had "complied with that aspect of the Resolution Agreement." Not. of Suggestion of Mootness in Part at 1, ECF No. 53. "OCR continues to monitor the College's compliance with other aspects" of the agreement. *Id.* n.2. The plaintiff responded incredulously, noting: "Just because the Defendants claim that the College is in compliance does not it [sic] so, even as it pertains to their manuals, policies or procedures." Pl.'s Resp. at 1, ECF No. 54.

**B. The Plaintiff's Claims**

In the four-count Complaint filed in March 2017, the plaintiff states: "Approaching two years, and Plaintiff has not yet returned to College due to action unlawfully withheld and/or unreasonabl[y] delayed by the OCR." Compl. ¶ 51. In Count I, the plaintiff seeks to "[c]ompel unlawfully withheld or unreasonably delayed" action, citing 5 U.S.C. § 706(1).[4] Count II alleges that OCR's actions were "[a]rbitrary, capricious, an abuse of discretion, not in accordance with law" and its "own Case Processing Manual," citing 5 U.S.C. § 706(2)(A); Count III alleges that OCR's actions were "[c]ontrary to constitutional right, power, privilege, or immunity, citing 5

---

[4] If a plaintiff succeeds on a failure-to-act claim, the court may grant relief by "compel[ling] agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but only as to (1) "a discrete action" that is (2) "legally required," *Norton v. S. Utah Wilderness Alliance ("SUWA"),* 542 U.S. 55, 63 (2004) (emphasis in original). To the extent that the plaintiff's § 706(1) claim is based on any delay by DOE in enforcing the threat assessment provisions of the Resolution Agreement, this aspect of his claims is rendered moot by DOE's September 11, 2017 notice of MDC's compliance.

4

U.S.C. § 706(2)(B); and Count IV alleges that OCR acted "[w]ithout observance of procedure required by law," citing 5 U.S.C. § 706(2)(D). Compl. at 14, 15, 16. In his Prayer for Relief, the plaintiff seeks declaratory and injunctive relief. Compl. ¶ 62.[5]

## II. APPLICABLE LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject matter jurisdiction over the claims asserted. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006); Fed. R. Civ. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the

---

[5] The plaintiff also seeks an advisory opinion "as to whether the actions of the individuals responsible in the U.S. Dep't of Education would be shielded in this case from suit for damages, given the extraordinary nature, against them individually." *Id.* ¶ 62c. The law, however, "is clear that '[t]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" *Hand v. Perez*, No. 14-cv-0880, 2015 WL 3534162, at *3 (D.D.C. June 5, 2015), *aff'd*, 672 Fed. App'x 24 (D.C. Cir. 2016) (quoting *Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) (other citation omitted)). Thus, this request for an advisory opinion is denied.

complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Moreover, in evaluating subject matter jurisdiction, the court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Herbert*, 974 F.2d at 197 (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Rule 12(b)(1) grounds for dismissal are examined first "as subject matter jurisdiction presents a threshold question." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014) (citing *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) and *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, ⎯⎯ U.S. ⎯⎯, 134 S.Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))). The court "need not, however, 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.' " *Nurriddin*, 818 F.3d at 756 (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). While matters "outside the pleadings" generally may not considered, without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), a court deciding a motion brought under Rule 12(b)(6) may, without triggering the conversion rule, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

**C. Administrative Procedure Act**

The APA authorizes any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek "judicial review thereof." 5 U.S.C. § 702. Actions subject to review encompass "[a]gency action made reviewable by statute and

7

final agency action for which there is no other adequate remedy in a court." *Id*. § 704. "[W]here a statute affords an opportunity for de novo district-court review" of the agency action, though, APA review is precluded since "Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the statute's review provision] and the APA." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (citation and internal quotation marks omitted); *see also Citizens for Responsibility & Ethics in Washington v. United States DOJ,* 846 F.3d 1235, 1244 (D.C. Cir. 2017) ("'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted)). Agency action is defined "as 'includ[ing] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189 (D.C. Cir. 2006) (quoting 5 U.S.C. § 551(13) (alteration in original)).

Under the APA, a "reviewing court shall decide all relevant questions of law . . . and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. An agency's "interpretation of its own regulations 'controls unless plainly erroneous or inconsistent with the regulation.'" *Press Commc'ns LLC v. FCC*, 875 F.3d 1117, 1121 (D.C. Cir. 2017) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (alterations omitted)); *accord Safari Club Int'l & NRA of Am. v. Zinke*, 878 F.3d 316, 326 (D.C. Cir. 2017) (same). The "court shall [ ] compel agency action unlawfully withheld or unreasonably delayed; and [ ] hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious,

. . . or otherwise not in accordance with law," or "without observance of procedure required by law." *Id*. § 706(1)–(2)(A), (D).

"Agency action is arbitrary and capricious 'if the agency has relied on factors which [law] has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.' " *Mayo v. Reynolds*, 875 F.3d 11, 19 (D.C. Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (alterations omitted)); *see also Safari Club Int'l*, 878 F.3d at 325 (noting that "[a] disputed action also may be set aside as arbitrary and capricious if the agency has acted 'without observance of procedure required by law.'") (citing 5 U.S.C. § 706(2)(D)). A court engaged in arbitrary and capricious review "must not substitute its own judgment for that of the agency," and "ordinarily uphold[s] an agency's decision so long as the agency 'examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'" *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (quoting *State Farm*, 463 U.S. at 43 (alterations and internal quotation marks omitted)).

## III. DISCUSSION

The two pending motions to dismiss are discussed below. As a threshold matter, the plaintiff has proposed a "Supplemental Complaint" against MDC arising from MDC's decision, on May 5, 2016, to expel the plaintiff following the individual threat assessment conducted in accordance with the Resolution Agreement. *See* Proposed Pleading at 4-5, ECF No. 27-1. This proposed pleading invokes 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, Title IX of the Education Act, and Florida law, as was done in at least two other actions filed appropriately in the U.S. District Court for the Southern District of Florida. *See Albra v. Dist. Bd. of Trustees of*

9

*Miami Dade Coll*., No. 17-cv-20757, 2017 WL 5241425, at *1-2 (S.D. Fla. filed Apr. 17, 2017) (dismissing amended complaint "as duplicative of *Albra v. Miami Dade College, et al*., No. 15-cv-23139" after enumerating the plaintiff's claims raised under the Constitution, the ADA, the Rehabilitation Act, and Florida law). The plaintiff's proposed claims are well beyond the scope of this litigation and this venue. *See Johnson v. Deloitte Servs., LLP*, 939 F. Supp. 2d 1, 3-4 (D.D.C. 2013) (proper ADA venue lies, *inter alia*, in the judicial district in the State where the alleged unlawful actions took place) (citing 42 U.S.C. § 12117(a), incorporating special venue provisions of Title VII of the Civil Rights Act); *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012) (same for Rehabilitation Act claims); 28 U.S.C. § 1391(b) (same for section 1983 and Title IX claims). Thus, the plaintiff's motion to file a supplemental complaint against MDC is denied.

### A. MDC's Motion to Dismiss

MDC contends correctly that subject matter jurisdiction is lacking because, as a state entity under the Florida College System, the APA does not apply to the college's actions. *See* MDC Mem. at 5-6 (citing Fla. Stat. §§ 1000.21(3)(o), 1001.60(2)); Compl. ¶ 13 (describing MDC as "a public College and a political subdivision of the State of Florida"). Indeed, the APA applies only to federal agencies and "may not be used to review the actions of . . . state entities." *Ealy v. United States*, 120 Fed. Cl. 801, 805 (2015) (citing *Pierce v. United States*, 117 Fed. Cl. 798, 801 (2014); 5 U.S.C. § 702)); *see Mwabira-Simera v. Howard Univ*., 692 F. Supp. 2d 65, 70 (D.D.C. 2010) (dismissing APA claim against University and individual defendants as "patently inapplicable on the facts presented" since "[t]he APA applies only to agencies of the federal government") (citing 5 U.S.C. §§ 701(b)(1), 704)). Hence, the complaint against MDC is dismissed under Rule 12(b)(1).

**B. The Federal Defendants' Motion to Dismiss**

The federal defendants contend that this APA action should be dismissed under Rule 12(b)(6) because, *inter alia*, the plaintiff has other adequate remedies available to him. *See* Mem. at 12-14. The Court agrees, particularly since the failure-to-act (or enforce) claim stemming from MDC's delayed threat assessment is no longer viable. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184 (D.C. Cir. 2006) (reaffirming that "the APA's final agency action requirement is not jurisdictional" but goes to whether relief may be granted under the APA) (citing *Center for Auto Safety v. NHTSA*, 452 F.3d 798, 805 (D.C. Cir. 2006) (other citation omitted)).

Distilled to its core, the original complaint alleges disability discrimination in violation of Section 504 of the Rehabilitation Act and Title II of the ADA. *See* Compl.'s Intro. and Stmt. of Facts ¶¶ 20-29. Section 504 provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Title II of the ADA is the state analogue of § 504. *See Tennessee v. Lane*, 541 U.S. 509, 517 (2004) ("Title II, §§ 12131–12134, prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public services, programs, or activities. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities.") (citation omitted)).

The Supreme Court has interpreted 5 U.S.C. § 704 "as precluding APA review where Congress has otherwise provided a 'special and adequate review procedure.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen*, 487 U.S. at 904). The ADA and the

Rehabilitation Act provide a comprehensive remedial scheme, which the plaintiff has in fact pursued. *See supra*; *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4 (D.C. Cir. 2000) ("The ADA's carefully crafted remedies scheme reveals the legislature's intent that the statute's enumerated remedies were to be exclusive[.]"); 29 U.S.C. § 794a(2) (applying to section 504 cases the "remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964"); 42 U.S.C. § 12133 (applying to ADA cases "[t]he remedies, procedures, and rights set forth in section 794a of Title 29"). In addition, relief is "deemed adequate" to foreclose APA review "'where there is a private cause of action against a third party otherwise subject to agency regulation.'" *Garcia*, 563 F.3d at 523 (quoting *El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F. 3d at 1271). Such applies here because the Resolution Agreement provides for the initiation of "administrative enforcement or judicial proceedings" against MDC "to enforce the specific terms and obligations" of the agreement. Agreement at 3. Hence, as to the federal defendants, the complaint fails to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that (1) it lacks subject matter jurisdiction over the Board of Trustees of Miami Dade College, and (2) no claim has been stated against the federal defendants. Accordingly, the defendants' separate motions to dismiss are granted, and the plaintiff's motion to supplement the complaint is denied.

A separate Order consistent with this Memorandum Opinion will be filed contemporaneously.

      /s/ *Beryl A. Howell*
      CHIEF JUDGE

DATE: February 15, 2018